BOARD OF ASSESSORS OF NEWTON *vs.* MICHAEL F. IODICE, trustee (and a consolidated case).[1] Nos. 89-P-877 & 89-P-986. January 14, 1991. *Taxation,* Real estate tax: abatement, value; Appellate Tax Board: appeal. *Administrative Law,* Substantial evidence. *Evidence,* Value.

---

[1]Two decisions of the Appellate Tax Board are consolidated on this appeal. One matter concerns real property at 264 Grove Street, the other real property at 2340 Commonwealth Avenue; both matters involve the same taxpayer.

This is an appeal by the board of assessors of the city of Newton from decisions by the Appellate Tax Board (board) granting abatements to Michael F. Iodice, trustee (the taxpayer), the owner of two parcels of real property, for fiscal years 1984, 1985, 1986, and 1987. The assessors challenge the board's decisions to apply only the capitalization of income approach to the taxpayer's real property and to treat the highest and best use of the property as residential rental units. We hold that the board's decisions were supported by substantial evidence, *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 465 (1981), and affirm the decisions.

The property involved consists of two parcels on which residential apartment complexes are situated and which have been used for residential rental purposes since their construction. The assessors sought to have the board determine the highest and best use of the property by taking into account the prices paid for garden-style apartment complexes in Newton which had been converted into condominiums during the years in question. The taxpayer resisted consideration of a conversion price approach to fair market value, pointing out that no steps had ever been taken to effect condominium conversion at either site.

In determining the fair market value, there was conflicting evidence as to what the highest and best use was. Each side offered expert testimony. The assessors' expert testified that "the highest and best use of any real property is the reasonable and probable use which supports the highest present value as of the date of valuation"; and the highest and best use for the taxpayer's properties for the fiscal years in question was "for continued residential use, with the most likely buyer in a hypothetical sale one who would convert the buildings to condominiums." The assessors' expert also offered three possible methods for calculating the fair cash value of the properties in order to assess appropriate tax: comparable sales, income capitalization, and condominium conversion. For the purposes of the comparable sales approach, the assessors' expert used eight sales of properties, which were the only sales of garden-style apartments in Newton during the 1980's, and noted that all of those sales were made to investors who subsequently converted the properties to condominiums. He achieved similar values for the taxpayer's properties (after adjusting the capitalization rate) under the income approach. The taxpayer's expert testified that, under the condominium conversion valuation approach, the properties would have a higher value because sellers would expect a higher price from a buyer, but he rejected that approach, stating that he regarded condominium conversion of the premises unlikely because of their poor physical condition and locational deficits.

Our review is limited to determining whether the board's decisions were supported by substantial evidence. See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. at 465; *Donlon* v. *Assessors of Holliston*, 389 Mass. 848, 851 n.3 (1983). "[S]ubstantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' " that

is to say, " 'whether experience permits the reasoning mind to make the finding; [i.e.,] whether the finding *could* have been made by reference to the logic of experience' " (emphasis in original). *New Boston Garden Corp.*, *supra* at 466, quoting from *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968), which, in turn, quotes from Jaffe, Judicial Control of Administrative Action 598 (1965). In so doing, we consider the entire record, taking into account anything contained therein which may tend to undermine the evidence which supports the board's decisions. *New Boston Garden Corp.*, *supra* at 466. The board need not believe the testimony of any particular witness, nor is it bound to adopt any particular method of valuation that appellant's expert witnesses may have urged. *Id.* at 469.

Here, the board heard and noted not only expert testimony, but also evidence about the locations and condition of the properties. It was free to ignore or discount, on the basis of credibility, any or all of the offered expert testimony it heard. See *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. at 469; *Foxboro Assocs.* v. *Assessors of Foxborough,* 385 Mass. 679, 683 (1982). Accord *Donlon* v. *Assessors of Holliston,* 389 Mass. at 856. Moreover, it was free to accept or reject any of the conflicting evidence presented to it. Further, as an administrative agency the board had recourse to its own expert knowledge. The board found the capitalization of income approach appropriate to use because it thought sales data unreliable. While data were available for properties that had been converted to condominiums, the board decided that a condominium conversion value of the taxpayer's properties was speculative.

The board's decision to discard the comparable sales approach as "too speculative" was within its purview, see *Foxboro Assocs.*, *supra*, and *Donlon*, *supra*, and the record provided ample support for the decision not to use the condominium conversion approach. Accordingly, the decisions of the board are affirmed.

*So ordered.*

*Ouida C.M. Young*, Assistant City Solicitor, for the Board of Assessors of Newton.

*Saul J. Feldman* for the taxpayer.